UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 1:25-CR-124 SNLJ |
| DARRELL NISWONGER, | ) |
| Defendant. | ) |

**DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE**

Defendant Darrell Niswonger, through Attorney William Marsh, respectfully requests that this Honorable Court grant a downward variance and impose a term of 60 months in the Bureau of Prisons. Under the unique circumstances of this case, such a term is sufficient, but not greater than necessary to accomplish the sentencing objectives set forth in 18 U.S.C. § 3553(a). In support, he states:

There is a phrase utilized by the federal defense bar to describe a personality type that is often associated with crimes of financial dishonesty: "fraud brain." This phenomenon is most quintessentially characterized by a complete and utter lack of accountability, a tendency to engage in circular conversations that circumvent meaningful discussion of the Government's evidence, disingenuous claims to moral purity, and sending counsel on wild goose chases to avoid any meaningful move toward resolution (whether by plea or trial). As the Court can imagine—and has probably experienced—defendants who are afflicted with "fraud brain" present a boon to the criminal justice system on multiple fronts, wasting the resources of

1

virtually every player involved in the process. They waste judicial resources through delay, executive resources by requiring—among other things—extensive reverse proffers, and defense resources by manipulating reality at every turn. As a defendant charged with multiple crimes of financial dishonesty, Darrel Niswonger represents the antithesis of "fraud brain." As outlined below, he has resolved his case in the swiftest and most radically accountable manner possible. This—combined with the fact that he is almost 70 years old and has never spent a single day of his life in jail—renders his requested 60-month sentence fair, just, and in line with the spirit of § 3553(a).

Counsel vividly remembers the first day he met Darrel. FBI agents had just served a search warrant on the office of Johnson and Niswonger Financial Resources in Perryville, MO, causing him to drive with his wife and son to St. Louis for a consultation with the undersigned. Having barely introduced himself, Darrel indicated that he would soon be accused of facilitating a Ponzi scheme with his business partner, that the accusations were true, and that he wanted to take accountability in a way that would minimize additional harm to his victims and put him on the best trajectory to try and make them whole. If he exhibited any anguish, it was over the damage he had done—not the scope of any legal consequences he may face. Darrel never once attempted to downplay his actions, nor did he inquire if there were any viable defenses or legal loopholes to exploit. His tone has been one of accountability from the minute he entered counsel's office, thus catalyzing the remarkably swift initiation—and resolution—of his criminal charges.

After Darrel left his initial consultation, counsel reached out to the Assistant United States Attorney to confirm the Government's interest in Mr. Niswonger as a target of investigation. Given the length of the scheme, however, and the relatively antiquated document

storage system utilized by Johnson and Niswonger, the Government indicated that an immediate resolution would be unlikely—there were simply too many documents to parse and check against the multitude of people who had invested their money with the business.

Rather than embrace the "grace period" that Darrel could have enjoyed had charges been delayed through a prolonged investigatory phase, he offered to meet with the Government and help make sense of what they had seized. In addition to giving authorities an honest and thorough account of the crimes he had committed, Darrel reviewed every single promissory note that FBI agents had taken, identifying how they all were linked to the scheme. This took the better part of an entire day.

Having put the Government in a position to make quick sense of an otherwise complex and document heavy case, Mr. Niswonger also suggested that he spare It the task of presenting his charges to the grand jury. Instead, he suggested pleading guilty to an information on the same day as his initial appearance. While the Government was open to this, there was some initial question as to whether the It could proceed in the manner. Had a grand jury presentation been necessary, Darrel stood ready to implicate himself under oath to minimize the Government's burden. As the record indicates, however, this never became necessary.

All told, Darrel met with the undersigned for the first time on April 29, 2025. Less than four months later, he presented himself for arraignment and pleaded guilty on the same day. Now he stands to be sentenced on November 14, 2025—less than seven months after authorities executed their search warrant on his business and less than three months after charges were first filed. As noted above, this is a remarkable break from the typical delay tactics that financial defendants often bring into federal court. Accordingly, he asks that this Court take his stance of accountability into strong consideration as It weighs his reasonable request for a five-year term.

3

In addition to facilitating the fastest and most efficient resolution of his case, Darrel has also taken meaningful steps to start paying off the restitution that he will owe his victims. Having sold his home in October, he directed the title company to forward his equity proceeds to counsel for posting with the Clerk of Court in conjunction with the Court's order permitting early partial payment of restitution. In requesting a 60-month sentence, he is also mindful of the fact that he will have significant additional restitution to pay upon release from the Bureau of Prisons, and therefore hopes to emerge at an age where he may still have meaningful earning potential.

As he approaches sentencing, Darrel Niswonger has not asked counsel to mine his past for mitigating factors to try and elicit sympathy from the Court. As both the PSR and his many sentencing letters indicate, there is much more to Darrel than the fraudulent scheme he perpetrated through his business. Nevertheless, he wants to maintain his focus on accountability, rectifying his bad acts, and embracing his faith to atone for them. As a 68-year-old man who has never set foot in a prison, 60 months is an exceedingly long time. With that in mind, Mr. Niswonger prays that this Honorable Court accept his request for a downward variance, impose his requested five-year sentence, and give him an opportunity to emerge from BOP in a position to continue working to make his victims whole.

WHEREFORE, Defendant Darrel Niswonger respectfully requests that this Honorable Court impose a sentence of 60 months in the Bureau of Prisons.

Respectfully submitted,

/s/ William T. Marsh
William T. Marsh, #60906MO
1401 South Brentwood Boulevard, Suite 950
St. Louis, Missouri 63144
Phone: (314) 455-5555

                                E-Mail: William.Marsh@KesslerWilliams.com
                                *Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on October 31, 2025, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

                                /s/ William T. Marsh
                                William T. Marsh